May it please the Court, my name is Steve Krafchick, I represent Nancy Wise. This appeal gives you an opportunity to reverse what we see as a travesty of justice and settle an issue of what statute of limitations applies in the context of an absence of a contractual statute of limitations. And we believe that statute of limitations needs to be the written statute of limitations in the absence of a more analogous statute. But if Congress made a deliberate choice not to include a general statute of limitations for ERISA claims and instead deferred to the various states, by definition doesn't that mean that Congress understood that there would be differing periods of time among each state? Correct, but virtually every state that's looked at this has either applied a written statute of limitations or some labor and employment statute of limitations. No case in the United States anywhere ever has applied an oral statute of limitations to a claim arising out of an ERISA plan. But normally I would think that most of the litigation arises over a claim under a written plan, which ERISA requires to be in writing. And so the dispute is over the contractual interpretation of the written contract. What's unusual about this case is that you've got a combination of a claim made under ERISA, but it relies in substantial part on parole evidence to show that there was a variation or modification of the contract in order to, I don't know what the term is, backdate or give her credit for her original hire date? There are two different levels. First, what's her right under the contract? And if you look at the ERISA plan, like any ERISA plan, it defines employee. It defines participant. It defines employee at ER 97. It defines participant at ER 99. It defines the requirements for coverage at ER 100. But doesn't it also provide that her benefits accrue after so much time after the date of hire? And the problem here is we've got two dates of hire. Yes, I understand what you're saying, but I don't agree with the interpretation. To decide whether the statute of limitations applies, you look at the written contract itself. If you apply the express terms of the written contract, she's out of time, isn't she? No. Because we would look at the second date of hire. The only way you can go back to the first date of hire is by introducing parole evidence that the contract is more than what's in the written document. But it doesn't work. That's how you interpret whether or not she is entitled to benefits. It's a coverage decision, much like when somebody makes an ERISA claim. No, it's how you establish the actual date when her benefits began to run. That's a pretty critical fact, is it not, in support of her claim? Because if it's the original date of hire, she wins. If it's the second date of hire, she loses. If you look at the Jenkins case and the Seventh Circuit cases that we've cited in our briefs, you look at first the ERISA plan. Does this claim arise out of the written ERISA plan? And the answer to that is yes, she's covered. She's making a claim under 1132A1B and other claims. And now she has a claim. She's covered for a period of time that begins to run on her date of hire. The problem is we've got two dates of hire. Let me try this. But for the bridging agreement and the oral statements, would she have been a participant under the plan? She was a participant under the plan for short-term disability benefits. Now the question is, can she be covered for long-term disability benefits? The only way you determine that is by the bridging agreement and the oral statements, right? No. She's covered under long-term. If she had a heart attack and that took her out, she would have been covered. I thought she was clearly covered under the plan, and the only underlying issue would be whether she could make a claim relating to her MS or whether that would be a preexisting condition. Correct. And that issue was never addressed by the court. Correct. Because the court said she's out on the statute of limitations. Correct. So let me ask this. Is there any circuit court in the country that's ever held there can be more than one statute of limitations applied within a particular state? In other words, in the state of Florida, some ERISA contract claims have three years, some have six. Or is all the precedent thus far simply to establish a statute for each state? I'm not aware of any state that has multiple statutes. It would strike me that if you make a decision like in this case Judge Peckman did, that an oral contract statute of limitation applies to this ERISA plan. It is like every other ERISA plan. So you would essentially be making a decision that would bind the Ninth Circuit to say you can now go to an oral contract because in the unique esoteric aspects of Washington law, there might be an argument that I don't believe lands anyway, but there might be an argument that because the beneficiary's name is not in the plan, it all of a sudden converts the ERISA plan into an oral contract. But states have differing statutes of limitation for oral versus written contracts. Oh, I understand. But that issue was addressed head on in the Seventh Circuit in the Jenkins case and the Central Washington cases, and they said, look, come on, this is an ERISA plan. It's a written plan. It's required to be in writing. It is in writing. The expectations of coverage all come from the writing. Now we have questions that the employer has to bring forward or the employee has to bring forward to assess the particular condition of the employee as it relates to the ERISA plan, which is the written document on which the whole action is based. So is your argument that parole evidence is necessarily going to be involved in every case because that information is not going to be found in the actual written terms of the plan document? Well, sure. I make the claim as an employee, and the first thing the company's going to do is they're going to ask my employer whether I'm covered or not. Now the employer could make a mistake, as we think in this case they did, but they said they weren't covered. They're two different levels. And for statute of limitations in the context of the purposes of ERISA, which would be to construed for the sole purpose of the beneficiaries, you can't apply the oral statute of limitations to this written document. It just doesn't make any sense. I have another question for you, counsel. Let's say I agree with your position, just for instance, and I think that a six-year statute should apply to all ERISA claims in the state of Washington. On the claim for benefits, can the insurer still, which isn't before us, but when you next got to the claim for benefits, could the insurer deny coverage for the MS that arose in the mid-1990s, you know, rather than honoring the bridging agreement? I think there are two issues here. There might be a question as to whether or not the company can offer a bridging agreement to someone, and we believe, as cited in the brief, that they had the power to do it, but let's assume that they didn't. Now what happens is you have a case that then would be ripe against the employer who failed to honor the hiring agreement, which is memorialized in the writing, and that relates to the other claims we have in the case. So, yes, they could make a decision that she's not covered for MS, but if you decide they can. But if your other claims are preempted, then you wouldn't have that claim, right? But they're not preempted because it's a hiring agreement, not an ERISA plan that would govern the second case. It's not an ERISA-involved decision. Even though the measure of damages is identical? Correct. In other words, your theory of damages would be she's owed whatever the amount would otherwise be payable under the plan. Right. They knew she had MS. They lured her back. They made a promise. They confirmed the promise in writing. The promise in writing wasn't honored for whatever reason, so what they were doing was committing either fraud or misrepresentation or outright negligence. But not about the plan, about the hire. About the hiring. I see. Okay, so that's how you avoid the penalty. Have you been in the face of an express preemption provision in the ERISA statute? Have you got a case that says that you can maintain a separate and viable cause of action against the employer? Not handy, but I know there are cases. Or is this the case? No, no, no. I've been down this road before. I just don't have it handy with me. I don't want to get you off on a tangent. I thought the preemption, because maybe I'm getting ahead of myself, but I thought the preemption standard was pretty broad, like that it would cover not just a claim under an ERISA plan, but any claim that touched upon or somehow related to an ERISA plan. There are two aspects there. You have to start to the ERISA plan. The hiring agreement is an inducement. I'm going to give you coverage if you come here. That's not the ERISA plan. That's the hiring agreement, which is outside of the context of ERISA. It could be an insurance plan that wasn't covered. It says, I'm going to give you coverage for your MS for disability. That's why you give it up at Quest and come here to us at GTE. I'd like to, if there are no more questions, I'd like to reserve some time for rebuttal. Okay, fine. That's fine. Good morning, Your Honor. If it please the Court, Tim O'Connell with the Stoll-Reeds Law Firm, on behalf of both defendants, Verizon and MetLife, in this matter, with me at counsel table is Elena Burt from my firm. If it please the Court, Judge Peckman should be affirmed for the reasons she decided the case. I'd like to just really touch on three areas. I think my comments will be brief. The first is the fundamental question, what's the correct statute of limitations in this case? The second are a couple of words on the arguments made in appellant's reply brief about the procedural unfairness of this process. And the last comment will address the preemption argument as well as some of the things that appellant said in his reply brief on the other causes of action. As to the fundamental question, I also think the only authority that plaintiff has cited to you, dealing with a state which has a choice in the statute of limitations, are the two Seventh Circuit decisions that he references, the Jenkins and Jordan case, and I think there are a couple of reasons at least why those decisions are not helpful for the Court and we have to look at the law of the state. I think Judge Coleman was exactly right. If Congress has declared that it is going to be a state law statute of limitations, that state law statute of limitations will differ. So let me just pose a question for you. Isn't the benefits claim is based on the ERISA plan, right? In this case, in part, yes. And the ERISA plan is a written contract? Absolutely. Those plans typically are never going to identify the name of every employee? Almost inevitably that is correct, Your Honor. Right, okay. So if a claim under the ERISA plan isn't a claim on a written contract, then are you saying that every ERISA claimant has a three-year statute in Washington? Yes, exactly. I think you're exactly right. That may well end up being the import is that when these claims are looked at searchingly,  But why would that make any sense? Because people have a written contract in their ERISA plan. So why wouldn't all the policies that led the legislature to give a longer limitations period on a written contract rather than an oral one, why wouldn't that all apply to ERISA? Because, Your Honor, as this Court has recognized, Congress indicated we look to state law statutes of limitations. And if the state law is that if you need parole evidence, it's a three-year statute, that's the applicable statute. The fact that it may be writing, memorializing some of the terms and conditions, but not all of the material terms necessary to establish a contract claim, means under the law of that state that it's an oral contract. And that, I submit, is the result here. But I thought that's what the Seventh Circuit decided in Jenkins. No, Your Honor, I would urge the Court to review some of those cases. In fact, Well, I read them, but I thought they supported the plaintiff's position. In fact, I'm quoting from the Jordan case, 873 F. 2nd at 153. These cases, and the Court is referring to Jenkins and the other case, these cases establish that extrinsic written evidence could be used to establish the identity of the parties without removing the contract from the ambit of the 10-year limitation. And that's the key issue, extrinsic written evidence. And that's conversant with Washington law. If you interrelate a series of documents to demonstrate that you have a written contract, you have a written contract, and the six-year statute applies. But I thought the bridging agreement was in writing. Is there something more that is missing? The bridging agreement, Your Honor, does not in any way reference the claim that is at the core of this case for long-term disability. Oh, because of the et cetera. Exactly right. We have explicit Washington law. Et cetera means you need parole evidence. And in fact, it's replete in plaintiff's briefing. Every time you see in plaintiff's briefing a reference to Excerpt of Record 90-91, what he is referencing is the declaration from the hiring supervisor. I mean, plaintiff repeatedly throughout their briefing recognizes they need recourse to parole evidence. And in fact, let me respond to the claim that is made most recently, only time, in the reply briefing, and that is this notion that if we look at the definition of what's an employee welfare benefit plan as opposed to what's a pension plan, well, clearly this is an employee welfare benefit plan, so therefore somehow we don't need to concern ourselves with the et cetera. Wrong. Plaintiff's briefing is able to make that argument only by ignoring the substantive regulations of the Department of Labor. I would cite you to specifically 29 CFR 2510.3-1 sub d. An employee welfare benefit plan does not include what are referred to as payroll practices. That is, things that the employer just pays out of its general operating budget, doesn't have a separate fund. Things like vacation and short-term sick pay. Those aren't ERISA plans at all. They're payroll plans. Those regulations have been accepted by the court repeatedly. And we don't have to guess in this case. Plaintiff put the documents as part of one of the exhibits to her complaint. It's Exhibit 4, page 000421. In that summary plan description, GTE, that's how old this is, it was GTE then, GTE identified what are the ERISA plans covered here. The vacation plan, the short-term sickness plan are not ERISA plans. So in order to say that this payroll clerk who talked about non-pension benefits such as vacation and sick pay, et cetera, et cetera, you need the parole evidence. You need the Bryant Declaration. In order to say that that encompasses the core of what this case is all about, long-term disability. Counsel, I have this question further then. Is it your client's position that in the state of Washington here, some ERISA claimants would be subject to three years and some would be subject to six years depending on the nature of their benefits claim? Or is it your position that they would all, if their name isn't named in the plan, they would all be under a three-year statute contrasted with, let's say, the great weight, what I think is the great weight of authority nationwide, that states are giving more time? Your Honor, it would not be the first time that Washington is unique. Oh, I understand that. But it's sort of like a trap for Washington consumers or employees. Your Honor, it is no more a trap than the normal operation of Washington law. The normal operation of Washington law is that if you need parole evidence to satisfy any of the material terms of a contract, three years. That's our law. And that's why we supplemented the record with the Dory's case in our supplemental authorities. That's how routine it is. The Court disposes of those claims in unpublished opinions. Mr. O'Connell, would you concede then that if the bridging agreement had replaced the word et cetera with long-term disability benefits, that it would be an integrated written contract to which the six-year statute would apply? Your Honor, change the facts and you change the result. But I thought you said that if the employee's name wasn't in the benefit plan, that would make it an oral agreement. I would assert that. Okay. So on Judge Tallman's change under your client's theories, that change would not be enough to make it written? I need to finish the thought, Your Honor. Clearly, I believe if you look at the Washington case law interpreting its statute of limitations, if you have a series of written documents that interrelate, those documents can be brought together such that the contract claim under the six-year statute would be applicable. But you need to have an interrelated series of written documents in order for it to be entirely in writing. But I'm not seeing how those documents, even if interrelated, would give you the name of employee John Doe or Jane Doe. I assume that's right. You would need to have some interrelated document that identifies the applicability of the plan to the claimant. No question. So if you needed any parole evidence whatsoever to decide whether or not those written documents were interrelated, it's your position that then you would go to the three-year statute? Correct. Even though if you looked at the interrelated documents themselves, you'd be able to determine that they all applied one to the other? Well, let me be as precise as I can, Your Honor, because we're getting outside the facts of our case. If you needed parole evidence to establish any of the material terms of a contract, Washington law indicates that's the statute of limitation that's applicable, a three-year statute. Now, if the parole evidence supplemented the interrelated documents that, by their operation together, satisfy all of the material terms of a contract, then the parole evidence is helpful to interpret but is not dispositive as to three or six years. Well, should we be concerned with a federal statute like ERISA, even though it adopts state law, statute of limitations, should we be concerned if in 49 states around the country, employees who have ERISA plans are going to get longer periods of time to make a claim, but in the state of Washington, they get three years and that's not true elsewhere? Your Honor, in fact, what counsel kind of glossed over is that it's not a written contract claim everywhere. There are some states where the statutes are shorter than three years. It's referenced in some of the briefing. A couple of states have some of their statutes of limitations arising from kind of wage claim statutes where it's as short as two years. We're not advocating for that. We're advocating for the result that applies from the Wetzel case, which is Washington's law about breach of contract. And frankly, Your Honor, it is a tough question for me perhaps, but again, that is the nature of federalism. When Congress defers to the statute of limitations devised by the states, those are going to be different and someone's going to be the shortest by definition. We would not be the shortest, but it would be the appropriate one for a contract violation. I do want to get a couple of words in. By the way, are there any cases, ERISA cases, that have been handed down that have applied a six-year statute on the claim in that case? A six-year statute? Right. Well, yes, Your Honor. I mean, several cases have applied. Involving the state of Washington claimants. Yes, Your Honor. So then it's your position that we can have some claimants in Washington under a six-year statute and some under a three? Let me finish the thought, Your Honor. There are cases. That is, I believe, make sure I get my point as right, the Flanagan case, which applied a six-year statute but did so without any analysis at all. I mean, literally there is not a word of analysis in the Flanagan case as to what is the appropriate statute of limitations. Is that a Ninth Circuit case? It is. So isn't our panel bound to follow a Ninth Circuit case? You are not bound to follow decisions that are applied without any analysis. And that's the – we reference the case a lot to that effect in our briefing. And that's the Flanagan case. Flanagan, apparently no one contested. Apparently no one raised. Maybe the facts weren't there that parole evidence was required in Flanagan as they are here. We don't know. I mean, literally there is not one word on that question. As to this notion about what's the appropriate notice or procedural fairness issues, I think plaintiff's request that you legislate additional terms in the Department of Labor's regulations about giving notice of statute of limitations are adequately dealt with in the briefing. I do feel some need to reply to this late-made argument that there is some unfairness in the review process by, quote, tacking on, close quotes, this notion that this is all a – the pre-existing conclusion issue, excuse me, the pre-existing condition issue is just tacked on. To the contrary, when you look at plaintiff's complaint, plaintiff alleges, paragraph 21, that she had adequate notice to deal with this issue because, in fact, in quoting from the complaint, she submitted evidence shooting down the pre-existing condition exclusion. So I believe all of this tacking on argument is after the fact and contrary to the facts in the record. Is there any explanation for why the plaintiff waited so long to raise the claim? I have no such explanation, Your Honor. If she had filed this claim in a timely fashion, we would not be here. If we had filed this claim in a timely fashion, we would have the correct corporate entity here. The entity that employed the plaintiff is no longer a part of Verizon. You know, there is, in fact, a case where there's prejudice here. I did have one question, and I'm not sure you can answer or you might want to answer it. You're appearing both on behalf of the plan administrator and the employer, as I understand it. That is correct. Has the plan administrator taken the position that the employer has no authority to modify the terms of coverage by this backdating agreement? Oh, absolutely. We would, Your Honor, if we got there. We evaluated that. I think that required a summary judgment motion rather than 12B-6. So if we were to be sent back, clearly. I mean, that's one of the reasons the plan administrators are fiduciaries on behalf of the plan administrator. Not some agreement made by some higher officials. Would MetLife and the plan administrator need separate counsel if we send this back? No. Would there be a conflict? No. We've evaluated that issue. The last point I really do want to make, if I have the chance, Your Honor, is this notion that somehow the other claims to which plaintiff has really devoted no substantial attention in their briefing, they are either barred by the applicable statute of limitations. I've never heard a word from plaintiff on that issue because all of those other claims have different statutes of limitations. I've never heard a word from them on that issue. This notion, though, that they're not right, for which plaintiff cites the VAUGHT, I don't know how that's pronounced, V-A-U-G-H-T, versus Scottsdale Health Care case, that case is precisely to the contrary. It does not support the proposition for which it's supposedly cited. And, indeed, to the contrary, it deals exclusively with the exhaustion issue and indicates that in ERISA it's merely remedy exhaustion. You must go through the process and get a final determination. As we have in this case, by the allegation and the complaint, paragraph 23, a final determination was made. Okay, counsel. Your time's up, but we used up a lot of your time. If you need another minute, go ahead and take it. Thank you, Your Honor. I would add just one other point, and that's to the accrual question. That is an open issue in the Ninth Circuit. The Wetzel case defines accrual in ERISA matters as either when the decision is made or when the claimant becomes aware of it. To the best of my ability to determine looking at the cases that have evaluated this issue in the Ninth Circuit, this is the first case you've been presented with where determining which of those two things that have always been joined by a disjunctive is determinative. But how is a claimant ever to know that the claim has been denied if there is not actual notification? As far as she knew, MetLife was still considering the claim, even though the committee had met and denied it a few days before she got the letter. Remember, in this case, her benefits had been terminated many months before. So this is not some of the ERISA cases that occur where the person is still receiving benefits and so there is some reason to be lulled into inactivity. Her benefits had been cut off literally months before all of that occurred. Secondly, that question, Your Honor, can be poised any time you've got a contract claim. The law is very clear. We've been saying all along, this is now a claim in the nature of a breach of contract action. The law is very clear. So your position would be it would be incumbent upon her to get a tolling agreement or to just go ahead and file a complaint? It would be incumbent on her to act in a timely fashion. Causes of action. The point I wanted to make on the accrual one is that we know from Congress that we're not going to automatically defer to the longer possible statute of limitations. That's because we can look at 29 U.S.C. 1113. That's the express statute of limitations applicable to a claim for violation of a fiduciary duty, the core function in ERISA. And there Congress said it's the earlier of. So much time after action or so much time after the plaintiff became aware. There is nothing in the record to suggest that Congress meant anything other than normal standards for accrual in a contract-based claim, which is that it accrues on breach, not on notice. Thank you. Okay. Thank you very much, counsel. Okay. Mr. Krafchick, if you need, we'll give you an extra minute as well. Thanks. I'm not sure I'll need it, but I'll take it. First of all. You're going to get your 20 minutes. I guess so. One or the other. First of all, I haven't heard the word mentioned fiduciary. The ERISA plan has a fiduciary relationship to its beneficiaries, and that trumps the typical contract analysis because you have a fiduciary. Well, that's a separate claim, isn't it? You've got a claim for benefits and then a claim for breach of fiduciary duty by the plan administrator. Isn't that a completely separate legal theory? No, there's an 8-2 claim that includes fiduciary duty as well, and then there's the 11-09 that's the separate fiduciary claim. Didn't you ask for equitable? You want to admit life removed as the administrator, right? That's 8-3. So why doesn't your fiduciary claim go to your claim for equitable relief? Because money will solve your client's ERISA claim problem. That is, to me, clearly an adequate remedy of law. Right, but we're at the complaint stage. We're at a 12-B-6 stage where nothing has been adjudicated. If we were to win the ERISA claim, we don't have any other claims we have to worry about. If we lose the ERISA claim, then we look to Verizon. If we win the 8-1 claim, we've got the 8-2 claim, the 8-3 claim, the judge will have to decide whether there's duplicative compensation or not. But the key is, in looking at this, you have to look through a lens of federal law, not state law, and you have to look at the ERISA purposes which we've set out. Now, I wanted to take a moment to talk about the bridging agreement because there's been some discussion of that. It is a writing and explains what it says. I don't need to go back through that. So it's more like the additional information in the Jenkins case and the central case, seven circuit cases. But the bridging agreement goes only to whether or not the preexisting condition exclusion applies to Ms. Wise. It doesn't go to any requirement of the plan. It doesn't change any requirement of the plan. It does reference, does it not, those aspects of those benefits, I guess, under the plan that the bridging agreement addresses. The problem you have is that it nowhere says long-term disability benefits. Instead, it ends with this ambiguous word, et cetera. Well, let's move off of et cetera and go to non-pension benefits, which it says it's non-pension benefits. And if you go to 29 CFR 2520.102-3 and you look at J2 or Rule J and 1 and 2, you have a separate rule for welfare benefit plans, which includes long-term disability plans, and you have a separate rule for pension plans. And that's true in the statute as well as we said in the briefing. So you don't need, when she says all your non-pension plans such as et cetera, you look at what a non-pension plan is. And ER 95 says that these are LTD benefits as group insurance benefits. You look at the component benefits in ER 101. Ms. Wise also provided the name of the person at the HR for Verizon who told her that these were non-pension benefits. Now we're getting into parole evidence. This was part of her appeal in her claim record. This was not parole evidence. She identified it. But you're offering the declaration of the HR person in order to fill a gap in a critical term of your breach of contract claim, which is that she was entitled to a long-term disability plan. Yeah, that goes to the SAFON type thing where they raise an issue that they don't give her full and fair review on. So she says, before the final decision is made, she says, I talked to Marcia Skyver at Verizon and she told me these were non-pension benefits. Then she gets a decision, and if you look at those decisions in the Verizon book, I mean, every SER document in there, every decision that Verizon claim committee looked at was denied, every one of them on March 8th. They routinely said denied, denied, denied, denied, denied. That doesn't indicate an independent review. I mean, maybe it was, maybe it wasn't, but it's certainly suspicious there. She tells them about Marcia Skyver and said non-pension benefits. This is Verizon's own person. There's no evidence that they ever talked to her to see if Ms. Wise had a basis for her appeal. So you look at the distinction between non-pension benefits, and you also look at that they include the welfare benefit plan benefits. That's distinct from the pension benefits. I don't think there's a real issue as to what that term means, even though defendant tries to say it's ambiguous. It's not ambiguous in the context of ERISA law because you have welfare benefit plans and you have pension plans, and this involves a welfare benefit plan, and welfare benefit plans include long-term disability benefits. Your time is, did we give you the extra minute? I think we did, didn't we? I'm not sure, but there's seven seconds there, and if there are no more questions, I'll sit down. Okay, well, thank you, sir. Okay, well, the case of Wise, I think Verizon has very nicely argued on both sides, and we appreciate both counsels putting up with our questions, and we'll get to it. So thank you both very much. Thank you.
judges: Benitez, Gould, Tallman